[No. 11688. In Bank. — December 15, 1888.]

SMITH BROWN, ASSIGNEE IN INSOLVENCY OF WILLIAM REED, RESPONDENT, v. BANK OF NAPA ET AL. BANK OF NAPA, APPELLANT.

SALE — WANT OF DELIVERY AND CHANGE OF POSSESSION — INVALIDITY OF SALE AS AGAINST ASSIGNEE IN INSOLVENCY OF VENDOR. — A sale of personal property in the possession of the vendor, which is not accompanied by an immediate delivery of the property to the vendee, and not followed by an immediate and continued change of possession, is void as against the assignee in insolvency of the vendor, under section 3440 of the Civil Code.

ID. — MALA FIDE PURCHASER FROM VENDEE — ASSIGNEE IN INSOLVENCY MAY MAINTAIN ACTION FOR CONVERSION. — A subsequent purchaser or encumbrancer claiming under the vendee, without having paid any consideration, or with notice of the illegality of the sale, acquires no greater rights in the property than those possessed by the original vendee; and if he takes the property from the possession of the assignee in insolvency, and converts it to his own use, the assignee may maintain an action to recover damages for the conversion.

APPEAL from a judgment of the Superior Court of Napa County, and from an order refusing a new trial.

The action was brought by the assignee in insolvency of William Reed to recover damages for the conversion of certain wine. Judgment was rendered in favor of the plaintiff, from which, and from an order refusing a new trial, the Bank of Napa appeals. The further facts are stated in the opinion of the court.

*Wallace & Johnston, F. E. Johnston,* and *Stanly, Stoney & Hayes,* for Appellant.

The assignee in insolvency had no right to maintain the action. (*Crill* v. *Doyle,* 53 Cal. 713.)

*G. W. Towle,* and *Coghlan & Coombs,* for Respondent.

THORNTON, J. — The principal question here presented is, whether an assignee in insolvency can maintain an action for the conversion of personal property against a vendee who has purchased such property of a vendor,

who had it in possession when the sale was made, which sale was not accompanied by an immediate delivery of the property sold to the vendee, and not followed by an immediate and continued change of possession.

The property in controversy was a quantity of wine. This was sold by William Reed on the 15th of September, 1884, to S. M. Chapman. There was no delivery to Chapman, and the wine remained, as before the sale, in Reed's possession. This continued to be the case until May 4, 1885, when the wine was attached as the property of Reed in an action brought against him. The interest which Chapman had acquired from Reed passed to the defendant, the Bank of Napa, prior to the 4th of May, 1885. How long prior does not appear, nor does it appear that the bank paid anything to Chapman on acquiring his interest.

On the evening of the 4th of May, 1885, the officer (one Brown) who had seized the wine under the writ of attachment before mentioned was ordered to release it from levy, and at the same time received a written request from the defendant, the Bank of Napa, to act as its agent, and take and hold the wine for it. The officer (Brown) kept the wine as the agent of the bank, placed a keeper in charge of it, and retained it in his possession until the bank removed it, between the 10th and 15th of May, 1885, from Reed's wine-cellar to the wine-cellar of Anduran and Carpy.

On the 5th of May, 1885, Reed commenced proceedings under the statute to be declared an insolvent, and subsequently procured a discharge. Smith Brown, the plaintiff, was in June, 1885, appointed assignee of Reed, and afterward qualified and acted as such. The action is brought by the plaintiff, assignee as above stated.

It is argued for the Bank of Napa, appellant here, that the sale to Chapman was not void as to the plaintiff, assignee in insolvency of the vendor Reed; that the plaintiff stood merely in the shoes of Reed, and that as the

sale was valid as to Reed, it was valid as to the assignee. We do not think that the contention is sound. The statute declares the sale is void as against his creditors while the vendor remains in possession, and the successors in interest of such creditors, and against any person on whom his estate devolves in trust for the benefit of others, and against purchasers and encumbrancers in good faith subsequent to the transfer.

We think that the assignee in insolvency is a person on whom the estate of an insolvent devolves in trust for the benefit of others. Such estate devolves upon the assignee by operation of law under the statutes in relation to insolvents in this state (see article 4 of the Insolvent Act, section 17) for the benefit of others, viz., the creditors of the insolvent. Of the correctness of this position, we do not entertain a doubt.

It was so held in *Merrill* v. *Hurlbert*, 63 Cal. 496, by Department One of this court, and we concur in and approve the ruling. It was also held in the case just cited that the assignee was the successor in interest of the creditors. There certainly is much reason for so holding. The creditors cannot sue to recover their debts. The assignee has the right to sue for and recover everything due to the estate for the benefit of the creditors. (Insolvent Act, secs. 18, 21.)

We adhere to this ruling, also, in the case cited.

There can be no doubt, we think, the transfer or sale by Reed to Chapman, as to the persons mentioned in the statute (Civ. Code, sec. 3440), was void. There was never the pretense of a delivery or any change of possession whatever on this sale. On the contrary, the bill of sale to Chapman shows that it was agreed between Reed and Chapman that the latter was to have the right to keep the wine in the tanks of Reed in his wine-cellar (where it was when sold) as long as he chose, provided he returned the tanks empty by July 1, 1885, where it remained until removed by the bank at the time above

stated.  We cannot perceive that the right of the defendant bank is any greater than that of Chapman.

The bank is not a purchaser or encumbrancer in good faith.  It does not appear in any way that it ever paid Chapman a cent, or anything of value for the wine, or made him any loan of money on it.  In this state of the case, the bank is a mere volunteer, stands in Chapman's place, clothed with his right to the wine, none other or greater.  The statute protects purchasers and encumbrancers in good faith subsequent to the transfer.  But such purchaser or encumbrancer must show his good faith by parting with his money, or money's worth, on acquiring the property without notice of any infirmity in the vendor's title.  We are of opinion that the evidence shows that the bank had notice of the infirmity of Chapman's title, and it is in effect so found.

It is further argued that the assignee cannot, conceding that he can maintain replevin, maintain an action for the conversion of the wine.

We see no ground on which any such position can rest.  If the sale or transfer of the property is void against the assignee, and it is withheld from him, he can maintain any appropriate action to redress the wrong. The bank clearly converted the property.  The right to the property by force of the law vested in the assignee. The law clothed him with the rights of an owner for the purpose of recovering it, and, like any other owner, he had a right to proceed to recover the specific property, or, where converted by another, to proceed for damages for its conversion.

We think the findings are in accordance with the requirements of the law.  The contradiction urged between the findings is only apparent.  They can be easily reconciled.  In finding that Reed was the owner of the wine on the 5th of May, 1885, when it is also found that he sold and transferred it to Chapman on the 15th of September, 1884, the court thereby intended to find that, as

to the plaintiff, Reed was the owner on the day mentioned, the sale to Chapman being void. It must be observed that the court finds that Reed was also the owner for a long time prior to May 5, 1885. The finding that Reed was the owner on the day named might be stricken out, and the findings would support the judgment. Striking out this part of the finding, they would then stand that for a long time prior to May 5, 1885, Reed was the owner of the wine, and on the 15th of September, 1884, sold and transferred it to Chapman. The case standing thus, as all parties claimed under Reed, we would not reverse, because it is not *expressly found* that Reed was the owner *on the day when* he made the transfer by bill of sale to Chapman.

We have examined all the points made and argued by counsel for the bank, and find nothing in them to justify a reversal.

Judgment and order affirmed.

SEARLS, C. J., McFARLAND, J., PATERSON, J., and SHARP-STEIN, J., concurred.

Rehearing denied.